UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK DAUGHERTY,

    Plaintiff                                Civil Action No. 19-12439

v.                                            HON. GEORGE CARAM STEEH
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Patrick Daugherty brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI respectively of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #12] be GRANTED and that Plaintiff's motion [Docket #9] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") respectively on June 6 and July 28, 2017 alleging disability as of March 12, 2014 (Tr. 203, 205). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on August 28, 2018 in Flint, Michigan (Tr. 15). Administrative Law Judge ("ALJ") Kevin W. Fallis presided. Plaintiff, represented by Joshua Todd McFarland, testified, as did Vocational Expert ("VE") Heather Benton (Tr. 20-43, 43-51). On October 18, 2018, ALJ Fallis found that Plaintiff was not disabled (Tr. 93-103). On June 26, 2019 the Appeals Council issued a decision, finding that the ALJ erred by finding that Plaintiff was not disabled from March 12, 2014 through October 18, 2018 (Tr. 5). The Appeals Council noted that on March 12, 2014, Plaintiff was still under a prior period of disability (Tr. 5). The Appeals Council found that the period properly under review was from April 26, 2016 (the day after the prior disability ceased) through ALJ Fallis' October 18, 2018 decision (Tr. 5). The Appeals Council found that ALJ Fallis' findings were otherwise well supported (Tr. 5-7). Plaintiff filed for judicial review of the final decision on August 19, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born March 6, 1981, was 37 at the time of the ALJ's determination (Tr. 103, 203). He completed twelfth grade and worked previously as a line technician in the aviation industry (Tr. 232). He alleges disability as a result of right knee surgery, left knee

meniscus surgery, lumbar spine fusion surgery, and a compressed neck disc (Tr. 231).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in Flushing, Michigan with his wife and 13-year-old son (Tr. 20). He was right-handed and weighed 236 pounds (Tr. 21). He held a driver's license but did not drive more than twice a week for more than 15 minutes due to lower back pain (Tr. 21). He received Workers' Compensation benefits after a March, 2011 injury (Tr. 22-23). Following the accident, he worked for a friend (Tr. 23). The work involved vacuuming floors, emptying trash, and wiping down windows (Tr. 24). He performed that work three to four days a week for six hours but was allowed to recline when needed for up to 90 minutes (Tr. 39). He typically missed work one day a week (Tr. 40). He ceased working at that job after sustaining neck injuries in a car accident (Tr. 24).

Plaintiff took OxyContin and Ibuprofen 800 for back pain (Tr. 26). He experienced the medication side effects of fatigue and extremity tingling (Tr. 26). He experienced constant back pain radiating into his lower extremities (Tr. 27). The left leg pain was worse (Tr. 27). He was scheduled for nerve conduction studies of the lower extremities (Tr. 28). His treating sources were considering switching his pain medication to Fentanyl and performing spinal surgery (Tr. 26). Plaintiff's pain was exacerbated by sitting and standing for extended periods (Tr. 29). He experienced neck pain every day which was increased by overhead lifting (Tr. 29). Plaintiff had undergone both neck and right knee injections (Tr.

30-31). He experienced pain upon kneeling, squatting, and bending (Tr. 32). He also experienced hip pain (Tr. 32). He had fallen due to hip pain four or five times since March, 2014 (Tr. 33). He experienced daily headaches lasting anywhere from 30 minutes to four hours (Tr. 33). He coped with headaches by reclining in a dark room (Tr. 33).

Plaintiff was unable to lift eight pounds for three hours in an eight-hour workday (Tr. 34). He was limited to sitting for one hour, standing for 20 minutes, and walking for 15 (Tr. 34-35). He experienced tingling and numbness of the upper extremities (Tr. 35). He had not performed any household chores since March, 2014 (Tr. 35). He did not need help with personal care activities (Tr. 36-37). Due to pain, he was unable to sleep more than four hours a night (Tr. 36). He took up to three naps everyday lasting between 45 minutes and two hours (Tr. 37). He denied the use of tobacco, alcohol, or street drugs (Tr. 37). His hobbies were limited to playing Euchre and video games and attending his son's basketball games (Tr. 37-38). He was typically required to alternate positions between sitting, standing, and walking while attending the games (Tr. 38).

In response to questioning by his attorney, Plaintiff testified that in addition to medication, he used a TENS unit and a neck traction unit (Tr. 42). He was able to handle and finger "in moderation" (Tr. 43).

### B. Medical Evidence[1]

#### 1. Treating Sources

March, 2014 records note that Plaintiff was prescribed Ibuprofen 400 (Tr. 338). Treating records note a right-sided meniscus tear (Tr. 339). May, 2014 treating records note Plaintiff's report of having fallen twice the previous winter (Tr. 334). Treating notes state that a recent MRI of the lumbar spine was "fine" with "no evidence" of disc herniations since the 2012 back surgery (Tr. 334, 337).

In July, 2017, Zaza Godziashvili, M.D. noted Plaintiff's allegations of radiant neck and back pain with extremity numbness since the May, 2017 "whiplash" injury sustained in a car accident (Tr. 293). Treating records show prescriptions for Oxycodone and Tramadol (Tr. 293). Dr. Godziashvili recommended physical therapy (Tr. 293). In August, 2017, Plaintiff sought treatment for neck pain. An MRI of the cervical spine showed "mild" facet arthrosis with "mild encroachment" of the left neural foramen at C6-C7 (Tr. 300, 304, 377).

October, 2017 records note that Plaintiff's neck was supple with 5/5 strength in the upper extremities and a steady, unassisted gait (Tr. 437). Nurse Practitioner Megan Curtis stated that there was "no neurosurgical reason preventing him from employment" (Tr. 437). Imaging studies of the cervical spine showed only "minimal" abnormalities (Tr. 440). In October and November, 2017, Plaintiff underwent cervical epidural steroid injections (Tr.

---

[1] The period under consideration is from April 26, 2016 (the day after the prior disability ceased) through ALJ Fallis' October 30, 2018 decision (Tr. 5). Records created prior to April 26, 2016 are included for background purposes only.

426, 428). November, 2017 urgent care records note a recent onset of lumbar back pain (Tr. 348). Plaintiff exhibited lumbar back tenderness (Tr. 348). He was prescribed a Lidoderm patch and Toradol (Tr. 348). Imaging studies showed "no evidence of lumbar instability" (Tr. 373). In December, 2017, Plaintiff sought emergency treatment for left-sided low back pain radiating into the lower left extremity (Tr. 308). He appeared "active" and in no acute distress (Tr. 311). An examination was negative for weakness (Tr. 312). An MRI of the lumbar spine was negative for disc herniation and stenosis (Tr. 316, 393). He was discharged in stable condition (Tr. 319).

February, 2018 records created during an assessment for a stomach condition note a full range of neck and back motion, 5/5 strength in all extremities, and a normal gait (Tr. 415). The following month, Plaintiff underwent a cervical epidural steroid injection (Tr. 422). May, 2018 treating records note that Plaintiff was positive for back pain and arthralgia but denied sleep disturbances (Tr. 446). He exhibited a normal range of cervical and lumbar spine motion (Tr. 446). September, 2018 nerve conduction studies of the lower extremities were "mildly abnormal" with electro diagnostic evidence of "mild, chronic, inactive right L5 and S1 radiculopathies and "mild, chronic, borderline active left S1 radiculopathy" (Tr. 460). The studies were negative for polyneuropathy (Tr. 460).

### 2. Non-Treating Sources

In December, 2017, Plaintiff failed to show for a consultative examination scheduled by the SSA (Tr. 333). The no-show appears to be attributable to the fact that on the same

day, he sought emergency treatment for back pain (Tr. 319).

The same month, Alice Metoyer, D.O. performed a non-examining assessment based on the treating records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for at least six hours in an eight-hour workday; and push and pull without limitation (Tr. 72). Dr. Metoyer found that Plaintiff was limited to occasional postural activity except for an unlimited ability to balance (Tr. 73). She found that Plaintiff should avoid concentrated exposure to wetness, vibration, and hazards such as machinery and heights (Tr. 73).

### C. Vocational Expert Testimony

VE Heather Benton classified Plaintiff's past relevant work as an airport utility worker as semiskilled and exertionally very heavy and work as a "cleaner, housekeeping" as unskilled/light[2] (Tr. 45-47, 274).

The ALJ posed the following question to the VE, describing an individual of Plaintiff's age, education, and work background:

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. The VE originally testified that the maintenance work was actually performed at the light level then corrected himself (Tr. 1110-1118). Plaintiff testified that the maintenance job was performed at the sedentary level (Tr. 1110).

> This individual would have to avoid concentrated exposure to wetness. They would have to avoid concentrated exposure to vibration. They would have to avoid concentrated use of hazardous moving machinery. They would have to avoid all exposure to unprotected heights. Could that individual do the airport utility worker position? (Tr. 48).

The VE found that the above restrictions would preclude Plaintiff's past relevant work as either an airport utility worker or the cleaner housekeeping position but would allow for the light, unskilled work of a cashier (over 1,000,000 positions in the national economy); stock clerk (230,000); and shipping clerk (65,000) (Tr. 48-49). She testified that if the original restrictions were amended to restrict the individual to only occasional overhead lifting, the job numbers would remain unchanged (Tr. 49). The VE testified that if the original set of restrictions were amended to limited the individual to sedentary work, he could perform the unskilled, sedentary work of an information clerk (80,000); interviewer (30,000); and office clerk (80,000) (Tr. 49-50). She stated that if the same individual were further limited to frequent handling and fingering and were required to avoid all vibration, the job numbers would remain unchanged (Tr. 50). The VE stated that if the same individual were off task for 20 percent or more of the workday, or, would require more than two days off work each month due to medical problems, all competitive work would be precluded (Tr. 50).

     The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that her testimony regarding overhead reaching and absenteeism was based on her own professional experience (Tr. 50-51). In response to questioning by Plaintiff's attorney, the VE testified that the need to take a 10 to

15 minutes break for every 30 minutes of work would be work-preclusive (Tr. 51).

### D. The ALJ's Decision

Citing the medical records, ALJ Fallis found that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar and cervical spine; degenerative joint disease of the right knee, status post-surgery; radiculopathy; headaches; sciatica; and obesity" but that none of the conditions met or medically equaled the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 96). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [C]laimant can never climb, ladders, ropes, or scaffolds but he can occasionally climb ramps or stairs, and can occasionally balance, stoop, kneel, crouch or crawl; the claimant must avoid concentrated exposure to wetness, and use of hazardous moving machinery; he must avoid all exposure to vibration and unprotected heights; the claimant is limited to only occasional overhead reaching; and the claimant is limited to frequent handling of objects and fingering bilaterally (Tr. 98).

Citing the VE's findings (Tr. 49-50), the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the unskilled work of an information clerk, interviewer, and office clerk (Tr. 102).

The ALJ discounted the allegations of disability. He noted that Plaintiff's treatment for the relevant period had been conservative and that EMG studies showed only mild radiculopathy (Tr. 98). The ALJ noted that Plaintiff had not been treated for knee pain since the alleged onset of disability date (Tr. 99). He cited a May, 2014 MRI showing

no significant root impingement of the lumbar spine (Tr. 99). The ALJ noted that Plaintiff denied numbness, tingling, and headaches at an October, 2014 appointment (Tr. 99). He noted that Plaintiff's treating source declined to recommend surgical intervention and found instead that Plaintiff should pursue "aggressive conservative management" (Tr. 100).

The ALJ acknowledged Plaintiff's May, 2017 car accident but noted that as of October, 2017 he denied numbness and tingling of the extremities (Tr. 100). He noted that MRIs of the cervical and lumbar spine taken in 2017 showed respectively a normal signal and "no evidence of lumbar instability intensity" (Tr. 100). The ALJ noted that a September, 2018 EMG of the lower extremities was only "mildly" abnormal (Tr. 100). He cited PA Curtis' October, 2017 statement that "no neurosurgical reason prevent[ed] [Plaintiff] from employment" (Tr. 101 *citing* Tr. 437).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as

'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

In his motion for summary judgment, Plaintiff contends, in effect, that ALJ Fallis did not give adequate consideration to a November 16, 2012 determination of disability as of March 7, 2011.  *Plaintiff's Brief,* [ECF No. 9, PageID.515] (*citing Drummond v. Comm'r. of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997)).

In response, Defendant points out that the Sixth Circuit has since clarified its ruling in *Drummond* to state that an ALJ is not bound by an earlier determination when considering the claimant's condition for a newer period. *Defendant's Brief,* [ECF No. 12,

PageID.530] (*citing Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th. Cir. 2018)). Defendant also notes that Plaintiff did not challenge the finding that his previous disability ended as of April 25, 2016. *Id.*

In reply, Plaintiff clarifies that he does not believe that the ALJ was "bound" by the previous findings but rather, points out that the RFC in the November 16, 2012 "disability" determination by ALJ Peter N. Dowd (Tr. 58-65) does not significantly differ from the RFC found in ALJ Fallis' current non-disability determination (Tr. 93-103). *Reply,* [ECF No. 13, PageID. 538]. He argues that the determination that his condition was improved since the previous determination of disability is not adequately supported.[3] *Id.*

In *Earley, supra,* the Sixth Circuit revisited *Drummond*, *supra,* rejecting the interpretation that prior administrative findings have a preclusive effect on the newer period. *Earley*, 893 F.3d at 934. The *Earley* Court held that the ALJ erred by finding that he was bound by the a previous determination without consideration of the evidence in support of disability submitted with a subsequent application for benefits for a more recent

---

[3] As discussed, ALJ Fallis' conclusion that Plaintiff was not disabled for the period at issue is well supported and explained. As such, the Court declines to discuss Defendant's argument that the finding of medical improvement as of April 26, 2016 constitutes sufficient "new and additional evidence" supporting the October 30, 2018 non-disability opinion. [ECF No. 12, PageID.533].

However, it is important to note that Plaintiff did not challenge the finding that he was no longer disabled as of April 26, 2016, but rather, waited to apply for benefits on June 6, 2017. Thus, the burden borne by Defendant in "cessation of benefits" proceedings is not present here.

period. The Court held that the prior administrative findings were not entitled to preclusive effect, but rather, were "'an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.'" *Id.* at 934 (*quoting Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999)).

As a threshold matter, Plaintiff's claim that the RFCs in the current and previous (disability) determination are not significantly different is without merit. Most obviously, the previous RFC contains the restriction of an "at will option to sit or stand" (Tr. 62). In contrast, the current RFC does not contain a "sit/stand" option, much less one that would allow Plaintiff to change positions whenever desired (Tr. 98).

Even assuming that the two RFCs were otherwise identical, the inclusion of a sit/stand "at will" option in the previous determination significantly reduces the number of available positions. Under SSR 96-9p, where the claimant requires a sit/stand option that "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). "The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." *Id.* "The imposition of a sit/stand at will [option] requirement allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand limitations." *Ferguson v. Comm'r of Soc. Sec.*, 2013 WL 530868, at *5 (E.D. Mich. January 23, 2013)(*citing* SSR 96-9p).

The "at will" sit/stand option included in the earlier determination was apparently based on the Plaintiff's need for crutches following back and knee surgery (Tr. 63). In contrast for the newer period, Plaintiff did not require crutches and demonstrated a normal gait (Tr. 415). The current RFC, reflecting the more recent evidence, differs significantly from the earlier period. The contention that the ALJ did not give adequate consideration to the earlier disability finding is also without merit. Citing *Drummond, supra,* ALJ Fallis stated that he would be "bound" by the earlier RFC absent "an improvement or change" in Plaintiff's condition (Tr. 96). ALJ Fallis' statement that he was presumptively "bound" reflects a level of deference to the earlier finding not supported by *Earley supra.* 893 F.3d at 934. Contrary to Plaintiff's claim, if anything, ALJ Fallis appears to have erred in the opposite direction by according undue weight to the prior disability determination.

Substantively speaking, ALJ Fallis provided a thorough explanation for a less restrictive RFC than in the previous determination. He discussed the evidence supporting the previous disability finding (Tr. 99). He cited more recent imaging studies showing no nerve root impingement (Tr. 100). He noted that while Plaintiff sustained neck injuries in a May, 2017 car accident, he was advised to pursue only conservative treatment (Tr. 100). The ALJ cited the MRIs of the lumbar and cervical spine showing only mild abnormalities and essentially unremarkable clinical tests (Tr. 100). He noted that the EMG studies showed only mild abnormalities (Tr. 100). He cited a nurse practitioner's October, 2017 finding that "there was no neurosurgical reason preventing [Plaintiff from]

employment" (Tr. 100 *citing* Tr. 437). The ALJ's findings reflect my own review of the record showing unremarkable clinical testing and at most mildly abnormal imaging studies.

For identical reasons, the Step Five determination that Plaintiff could perform a significant range of unskilled, sedentary work does not warrant a remand. The VE testified that the restrictions found in the RFC would not prevent the full-time work of an information clerk, interviewer, and office clerk (Tr. 94-95, 102). The ALJ's choice of restrictions (and omission of others) in the hypothetical question and identical RFC, constitute substantial evidence in support of the Step Five findings. *See Stanley v. Secretary of Health and Human Servcs.*, 39 F.3d 115, 118-119 (6th Cir. 1994)(ALJ not obliged to credit unsupported allegations of limitation in the question to VE or by extension, in the ultimate RFC). More generally, because the ALJ's rationale for rejecting the allegations of limitation is well supported and explained, his weighing of Plaintiff's allegations against the other evidence of record is entitled to deference. *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's determination is entitled to "great weight"); *see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*quoting Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))("ALJ's evaluation of the professed limitations must stand unless 'patently wrong in view of the cold record'").

In closing, I note that the record supports some degree of limitation due to neck,

back, and knee conditions. However, the determination that these conditions were not work-preclusive is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and thus, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #12] be GRANTED and that Plaintiff's motion [Docket #9] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must

file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

                                              s/R. Steven Whalen
                                                  R. STEVEN WHALEN
                                              United States Magistrate Judge

Dated: May 31, 2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 31, 2020 electronically and/or by U.S. mail.

                                              s/Carolyn M. Ciesla
                                              Case Manager